# EXHIBIT A

SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among Melina Ebu-Isaac ("Relator"); Relators' authorized representatives Young Law Group, Miller Shah LLP, Kang Haggerty & Fetbroyt LLC, and Richard J. Hollawell & Associates (collectively, "Relator's Counsel"); and Linden Care, LLC; Linden Care, Inc.; Linden Care Holdings, Inc.; Quick Care Pharmacy, Inc.; Belhealth Investment Partners, LLC; Belhealth Investment Management, LLC; Belhealth Investment Fund, LP; Harold Blue; Inder Tallur; and Dennis Drislane (collectively, "Defendants"), through their authorized representatives.  Collectively, Relator and Defendants will be referred to herein as "the Parties."  The United States of America and the States of California, Colorado, Connecticut, Delaware,  Hawaii, Illinois, Indiana,  Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Rhode Island, Tennessee, Virginia and Washington (hereafter collectively referred to as "Medicaid Participating States"), as well as the City of Chicago ("Chicago"), are not parties to the Agreement; however, the Agreement is conditioned upon the written consents of the United States and the Medicaid Participating States, as well as Chicago, to the dismissal of the Action as defined below.

RECITALS

A. On October 25, 2016, Relator filed a qui tam action in the United States District Court for the Central District of California captioned *United States et al. ex rel. Ebu-Isaac v. Insys Therapeutics, Inc., et al.*, No. 2:16-cv-07937-JLS-ASx (C.D. Cal.), pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the Civil Action) against Insys Therapeutics, Inc. ("Insys") and Linden Care (the "Complaint").  (Dkt. No. 1).  The United States, certain other states and Chicago subsequently filed notices with the Court indicating that

that they were partially intervening in the Complaint as to certain claims asserted against Insys, which were ultimately settled, and declined intervention as to all claims against Linden Care. Relator filed an Amended Complaint on August 13, 2018 (Dkt. No. 56) and a Corrected First Amended Complaint on September 18, 2018 (Dkt. No. 65), and a Second Amended Complaint on September 18, 2020 to name Belhealth (Dkt. No. 130) and a Third Amended Complaint on August 27, 2021 to name Quick Care, Harold Blue, Inder Tallur, and Dennis Drislane (Dkt. No. 202).

      B.      The Defendants named in Relator's Third Amended Complaint are as follows:

      1.      Linden Care LLC, which was a limited liability company, registered in New York, with its principal place of business located at 130 Crossways Park Drive, Suite 101, Woodbury, New York.  Linden Care LLC was founded in 2006 as a provider of specialty pharmacy services to the pain management industry and had two members, Defendants, Linden Care, Inc. and Linden Care Holdings, Inc.

      2.      Linden Care, Inc, which was a corporation formed under the laws of the State of Delaware on May 1, 2013, and which was registered to conduct business in the State of New York under the name Linden Care NY on May 13, 2013.  Linden Care, Inc.'s principal place of business was located at 217 Woodbury Road, Unit 747, Woodbury, New York 11797.

      3.      Linden Care Holdings, Inc., which was a corporation formed under the laws of the State of Delaware on June 13, 2013, and which was registered to conduct business in the State of New York on July 1, 2013.  Linden Care Holdings, Inc's principal place of business was located at 126 East 56th Street, 10th Floor, New York, NY 10022.

      4.      Quick Care Pharmacy, Inc., which was a corporation formed under the laws of the State of California on June 10, 2008 by Rohit Sheta and registered to conduct

2

business in the State of California on August 7, 2009. Quick Care Pharmacy, Inc.'s principal place of business was located at 9397 Haven Ave. Rancvho Cucamonga CA 91730 and was a pain-focused specialty pharmacy. On July 25, 2013, Quick Care Pharmacy, Inc. began operating as a "Linden Care Company."

      5.      BelHealth Investment Fund, LP is a private equity fund, that operates as a limited partnership, formed under the laws of the State of Delaware in 2011, with its principal place of business located at 26 Harbor Park Drive, Port Washington, NY 11050. In July 2013, BelHealth Investment Fund, LP acquired interests in Linden Care Holdings Inc. as a portfolio company of the fund.

      6.      BelHealth Investment Management, LLC is a limited liability corporation formed under the laws of the State of Delaware on March 18, 2011, with its principal place of business located at 126 East 56th Street, 10th Floor, New York, NY 10022. BelHealth Investment Management, LLC served as the General Partner of Belhealth Investment Fund LP.

      7.      BelHealth Investment Partners, LLC is a health care-focused private equity firm operating as a limited liability corporation formed under the laws of the State of Delaware on March 23, 2011, with its principal place of business located at 26 Harbor Park Drive, Port Washington, NY 11050. BelHealth Investment Partners, LLC is the manager of BelHealth Investment Fund, LP.

      8.      Harold Blue is an adult individual residing Miami, Florida . Harold Blue is a founder and managing partner of BelHealth Investment Partrners.

      9.      Dennis Drislane is an adult individual residing in Newport Coast, California . Dennis Drislane is a managing partner of BelHealth Investment Partners.

    10. Inder Tallur is an adult individual residing in Bridgewater, Connecticut 06752.  Inder Tallur is a managing partner of BelHealth Investment Partners.

  C. Relator contends that, between January 1, 2012 and December 31, 2017 (the "Covered Conduct Period"), Defendants knowingly submitted, conspired to submit, or caused to be submitted false or fraudulent claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll ("Medicare"); the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid"); the TRICARE Program, 10 U.S.C. §§ 1071-1110b ("TRICARE"); and the Department of Veterans Affairs, Veterans Health Administration, 38 U.S.C. Chapter 17, for off-label and medically unnecessary prescriptions of SUBSYS (fentanyl sublingual spray).  The conduct described in this Paragraph is referred to below as the "Covered Conduct" and is specifically limited to the Covered Conduct Period and only is related to Defendants' conduct related to SUBSYS.

  D. This Settlement Agreement is neither an admission of liability by Defendants nor a concession by Relator or the United States, the Medicaid Participating States or Chicago that her claims are not well founded.

  E. Relator claims entitlement under 31 U.S.C. § 3730(d) and equivalent state and municipal laws to a share of the proceeds of this Settlement Agreement (the "Relator's Share") and to Relator's reasonable expenses, attorneys' fees and costs.

  To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1. Defendants shall pay to the United States and the Medicaid Participating States five million three hundred ninety-three thousand seven hundred and two dollars ($5,393,702) (the "FCA Settlement Amount"), of which two million six hundred ninety-six thousand eight hundred fifty-one dollars ($2,696,851) is restitution, no later than 24 days after the Effective Date of this Agreement as follows:

   A. Defendants shall pay to the United States five million two hundred and forty-two thousand, two hundred and seventy-six dollars and eighty-nine cents ($5,242,276.89) by electronic funds transfer pursuant to written instructions to be provided by the Civil Division of the Department of Justice.

   B. Defendants shall pay to the Medicaid Participating States one hundred fifty-one thousand, four hundred and twenty-five dollars and eleven cents ($151,425.11) by electronic funds transfer pursuant to written instructions to be provided by the State of North Carolina on behalf of the Medicaid Participating States.

2. Defendants shall pay to Relator's counsel three million six hundred and six thousand two hundred ninety-eight dollars ($3,606,298) pursuant to 31 U.S.C. § 3730(d) for expenses, attorney's fees, and costs arising from the filing of or in connection with the Action (the "Attorneys' Settlement Amount" and, with the FCA Settlement Amount, the "Settlement Amounts"), as well as to provide for payment to the City of Chicago, by electronic funds transfer no later than 24 days after the Effective Date of this Agreement pursuant to written instructions to be provided by James E. Miller of Miller Shah LLP. A payment in the amount of $5,000.00 will be made to the City of Chicago from this amount as part of this Agreement.

3.  Subject to the exceptions in Paragraph 4 below, and conditioned upon the United States' and the Medicaid Participating States' receipt of their respective portions of the FCA Settlement Amount and Relator's Counsel's receipt of the Attorneys' Settlement Amount, Relator, for herself and her heirs, successors, attorneys, agents, and assigns, releases Defendants, their shareholders, partners, officers, directors, agents, employees, attorneys, independent contractors, heirs, spouses, beneficiaries, or personal representatives ("Released Parties") from any civil monetary claim the Relator has, or has asserted or could have asserted on her own behalf or on behalf of the United States and the Medicaid Participating States or any other states, as well as Chicago, for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733 and similar state and local laws (the "Claims").

4.  Notwithstanding the releases given in paragraph 3 of this Agreement, or any other terms of this Agreement, the following claims of the United States and Medicaid Participating States are specifically reserved and are not released:

    a.  Any liability arising under Title 26, U.S. Code (Internal Revenue Code) or any state revenue codes;

    b.  Any criminal liability;

    c.  Any administrative liability or enforcement right, including mandatory or permissive exclusion from Federal health care programs;

    d.  Any liability to the United States (or its agencies) or to the Medicaid Participating States for any conduct other than the Covered Conduct;

    e.  Any liability based upon obligations created by this Agreement;

6

    f.  Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

    g.  Any liability of individuals other than those individuals that are party to this Agreement;

    h.  Any liability for failure to deliver goods or services due; and

    i.  Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

  5.  Relator and her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).  Conditioned upon Relator's receipt of payment of an agreed-upon or otherwise awarded Relator's Share, Relator and her heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.  In addition, conditioned upon Relator's receipt of the Relator's Share, Relator and her heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the Medicaid Participating States and Chicago, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

  6.  Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based

7

in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

7.      Defendants fully and finally release the United States, the Medicaid Participating States and Chicago, as well as their agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the investigation thereof by the United States, the Medicaid Participating States and Chicago.

8.      Except as otherwise provided for in this Agreement, Defendants fully and finally release the Relator and Relator fully and finally releases Defendants from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the Relator, related to the Covered Conduct and the Relator's investigation and prosecution thereof.

9.      The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier), Medicaid carrier or payer, TRICARE carrier or payer, VA carrier or payer, or any state payer, related to the Covered Conduct; and Defendants agree not to resubmit to any Medicare contractor, Medicaid carrier or payer, TRICARE carrier or payer, VA carrier or payer, or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

8

10. Defendants agree to the following:

    a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendants, their present or former officers, directors, employees, shareholders, and agents in connection with:

        (1) the matters covered by this Agreement;

        (2) the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

        (3) Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

        (4) the negotiation and performance of this Agreement; and

        (5) the payment Defendants make to the United States pursuant to this Agreement and any payments that Defendants may make to Relator or Relator's Counsel, including costs and attorney's fees.

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

    b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State

Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Defendants or any of their subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

        c.       <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Defendants further agree that within 90 days of the Effective Date of this Agreement they shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendants or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Defendants or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on Defendants or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

d. Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Defendants' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

11. Defendants agree to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Defendants shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Defendants further agree to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

12. This Agreement is intended to be for the benefit of the Parties, United States, Medicaid Participating States and Chicago only. The Parties do not release any claims against any other person or entity other than the Released Parties, except to the extent provided for in Paragraph 13 (waiver for beneficiaries paragraph) below.

13. Defendants agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

14. In exchange for valuable consideration provided in this Agreement, Defendants and Relator acknowledge the following:

a. Defendants (with the exception of Linden Care LLC, Linden Care, Inc. and Linden Care Holdings, Inc., Quick Care Pharmacy, Inc. a/k/a Linden Care Company, which no longer are operating business entities) have reviewed their financial situation and warrant that they are solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I) and shall remain solvent following payment of the Settlement Amounts.

b. In evaluating whether to execute this Agreement, the Parties intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Defendants, within the meaning of 11 U.S.C. § 547(c)(1), and the Parties conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

c. The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do in fact, constitute a reasonably equivalent exchange of value.

d. The Parties do not intend to hinder, delay, or defraud any entity to which Defendants were or became indebted to on or after the date of any transfer contemplated in this Agreement, within the meaning of 11 U.S.C. § 548(a)(1).

e. If any of Defendants' payments or obligations under this Agreement are avoided for any reason (including but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code) or if, before the Settlement Amount is paid in full, Defendants or a third party commence a case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors seeking any order for relief of any of Defendants' debts, or to adjudicate any of Defendants as bankrupt or insolvent; or seeking appointment of a receiver, trustee, custodian, or other similar official for Defendants or for all or any substantial part of Defendants' assets:

12

(i) Relator may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by the releases provided in Paragraph 3 and 5 above;

(ii) the United States, Medicaid Participating States, Chicago and Relator have undisputed, noncontingent, and liquidated allowed claims against Defendants for [the full amount of the claim plus treble damages and penalties and/or attorneys' fees and costs] less any payments received pursuant to Paragraphs 1 and 2 of this Agreement, provided, however, that such payments are not otherwise avoided and recovered from the United States by Defendants, a receiver, trustee, custodian, or other similar official for Defendants;

(iii) if any payments are avoided and recovered by a receiver, trustee, creditor, custodian, or similar official, the United States shall not be responsible for the return of any amounts already paid by the United States to the Relator; and

(iv) if, notwithstanding subparagraph (iii), any amounts already paid by the United States to the Relator pursuant to Paragraph 1 are recovered from the United States in an action or proceeding filed by a receiver, trustee, creditor, custodian, or similar official in or in connection with a bankruptcy case that is filed within two years of the Effective Date of this Agreement or of any payment made under Paragraph 1 of this Agreement, Relator shall, within thirty days of written notice from the United States to the undersigned Relator's counsel, return to the United States all amounts recovered from the United States.

f.      Defendants agree that any civil and/or administrative claim, action, or proceeding brought by the United States under Paragraph 14.e is not subject to an "automatic stay" pursuant

13

to 11 U.S.C. § 362(a) because it would be an exercise of the United States' police and regulatory power. Defendants shall not argue or otherwise contend that the United States' claim, action, or proceeding is subject to an automatic stay and, to the extent necessary, consents to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1). Defendants waive and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claim, action, or proceeding brought by the United States within 120 days of written notification to Defendants that the releases have been rescinded pursuant to this paragraph, except to the extent such defenses were available on October 25, 2016.

15. Upon receipt of the payments described in Paragraphs 1 and 2, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1). The Parties will employ their best efforts to ensure that the United States, the Medicaid Participating States and Chicago will, pursuant to 31 U.S.C. § 3730(b)(1) and the analogous statutes and/or ordinances of the Medicaid Participating States and Chicago, respectively, consent to the dismissal with prejudice as to the Covered Conduct and otherwise without prejudice to the United States, the Medicaid Participating States and Chicago.

16. Except as set forth herein, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

17. Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

18. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District

Court for the Central District of California.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

19. This Agreement constitutes the complete agreement between the Parties.  This Agreement may not be amended except by written consent of the Parties.

20. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

21. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

22. This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

23. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

24. All Parties consent to the disclosure of this Agreement by the United States, the States and Chicago, and information about this Agreement, to the public.

25. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

DATED:  May 3, 2023

| **NORTON ROSE FULBRIGHT US LLP** | **MILLER SHAH LLP** |
|---|---|
| *William J. Leone* | *James E. Miller* |
| WILLIAM J. LEONE | JAMES E. MILLER (SBN 262553) |
| William.leone@nortonrosefulbright.com | jemiller@millershah.com |
| JACOB LAKSIN | 65 Main Street |
| jacob.laksin@nortonrosefulbright.com | Chester, CT 06412 |
| 1301 Avenue of the America | Telephone: 860-526-1100 |
| New York, NY 10019 | Facsimile: 866-300-7367 |
| Telephone: 212-318-3400 | |

| | |
|---|---|
| **NORTON ROSE FULBRIGHT US LLP**<br>CHAKAMEH GANJI (SBN 311720)<br>Chakameh.ganji@nortonrosefulbright.com<br>55 South Flower Street,<br>Forty First Floor<br>Los Angeles, CA 90071<br>Telephone: 213-892-9200<br>Facsimile: 213-892-9494<br><br>*Attorneys for Defendants Belhealth Investment Partners, LLC, Belhealth Investment Management, LLC, Belhealth Investment Fund, LP, Harold Blue, Inder Tallur, and Dennis Drislane*<br><br>**FRIER & LEVITT, LLC**<br><br>_____<br>JONATHAN E. LEVITT<br>jlevitt@frierlevitt.com<br>84 Bloomfield Avenue<br>Pine Brook, NJ 07058<br>Telephone: 973-618-1660<br>Facsimile: 973-618-0650<br><br>**FENTON LAW GROUP, LLP**<br><br>_____<br>NICHOLAS D. JURKOWITZ (SBN 261283)<br>njurkowitz@fentonlawgroup.com<br>1900 S. Bundy Drive #77<br>Los Angeles, CA 90025<br>Telephone: 310-444-5244<br>Facsimile: 310-444-5280<br><br>*Attorneys for Defendants Linden Care, LLC, Linden Care, Inc., Linden Care Holdings, Inc., and Quick Care Pharmacy, Inc.*<br>**MELINA EBU-ISAAC - RELATOR**<br><br>DATED:  May 3, 2023      BY: | **KANG HAGGERTY & FETBROYT, LLC**<br>EDWARD T. KANG<br>ekang@kanghaggerty.com<br>KANDIS L. KOVALSKY<br>kkovalsky@kanghaggerty.com<br>123 S. Broad St., Suite 1670<br>Philadelphia, PA 19109<br>Telephone: 215-525-5850<br>Facsimile: 215-525-5860<br><br>**YOUNG LAW GROUP**<br>ERIC L. YOUNG<br>eyoung@young-lawgroup.com<br>3031C Walton Road, Suite 301, Plymouth Meeting, PA 19462<br>Telephone: 800-590-4116<br><br>**RICHARD J. HOLLAWELL & ASSOCIATES**<br>RICHARD J. HOLLAWELL<br>rjh@richardhollawell.com<br>121 Saratoga Lane<br>Woolwich Twp., NJ 08085<br>Telephone: 215-498-8609<br>Facsimile: 856-467-5101<br><br>**MILLER SHAH LLP**<br>KOLIN C. TANG (SBN 279834)<br>kctang@millershah.com<br>19712 MacArthur Boulevard, Suite 222<br>Irvine, CA 92612<br>Telephone: 323-510-4060<br>Facsimile: 866-300-7367<br><br>*Attorneys for Relator-Plaintiff Melina Spalter (Ebu-Isaac)*<br><br>_____<br>Melina Ebu-Isaac |

16

**Linden Care, LLC; Linden Care, Inc.; Linden Care Holdings, Inc.; Quick Care Pharmacy, Inc. – Defendants**


DATED: May  4 , 2023         BY: _____
                                            Vera Abramova
                                            Linden Care, LLC, Linden Care, Inc., Linden Care
                                            Holdings, Inc., and Quick Care Pharmacy, Inc.

DATED: May  4, 2023          BY: _____
                                            JONATHAN E. LEVITT
                                            FRIER & LEVITT, LLC
                                            Counsel for Linden Care, LLC, Linden Care, Inc.,
                                            Linden Care Holdings, Inc., and Quick Care
                                            Pharmacy, Inc.